J-A08027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWIN NIMELEY BROWNE | |
| Appellant | No. 1665 EDA 2016 |

Appeal from the Judgment of Sentence May 3, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004407-2015

BEFORE:  PANELLA, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 22, 2017**

Edwin Nimeley Browne appeals from his judgment of sentence, entered in the Court of Common Pleas of Delaware County, after he was convicted in a stipulated nonjury trial of possession of a small amount of marijuana for personal use,[1] firearms not to be carried without a license,[2] and criminal attempt – theft by deception.[3]  Upon careful review, we affirm.

On June 14, 2015, at approximately 3:15 a.m., Officer Mark Tancredi of the Tinicum Township Police Department responded to a call of an

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. 780-113(a)(31).

[2] 18 Pa.C.S.A. § 6106(a)(1).

[3] 18 Pa.C.S.A. § 901(a); 18 Pa.C.S.A. § 3922.

individual attempting to pass counterfeit $100 bills at a Wawa in Essington. By the time Officer Tancredi arrived at the Wawa, the individual was gone. However, he spoke to eyewitnesses, who described the suspect as a black male, probably in his early 20s, wearing a green ninja turtle shirt, who left the scene in a white vehicle, possibly a Dodge Charger.

Approximately 20 to 30 minutes later, Corporal Brian Reilly, also of the Tinicum Township Police, heard a radio call describing the counterfeiting suspect. He began searching for the vehicle as he patrolled, eventually spotting a white Dodge Charger in the parking lot of the Quality Inn in Lester. Corporal Reilly approached the driver's side of the vehicle and immediately saw the passenger, subsequently identified as Browne, was a black male wearing a green ninja turtle shirt. Corporal Reilly asked who had the fake $100 bills, at which point, Browne reached into his pocket and handed counterfeit currency to the driver, who then handed it to Corporal Reilly. Corporal Reilly was aware that the currency was counterfeit because they did not feel genuine and the serial numbers on the bills were the same.

Officer Tancredi arrived at the scene and approached Browne, who by that time was standing at the rear of the vehicle. As Officer Tancredi passed the passenger side of the vehicle, he smelled the strong odor of marijuana emanating from the vehicle. When he reached Browne, he also smelled marijuana on his person. Officer Tancredi entered the vehicle and discovered a plastic bag of marijuana under a CD in the center console area, next to the gear shift, and a .22 caliber Ruger revolver, loaded with six live

rounds, under the front passenger seat. The firearm was neither stolen nor owned by or registered to Browne or the driver.

On March 29, 2016, the Honorable Anthony D. Scanlon convicted Browne of the above offenses. On May 3, 2016, Browne was sentenced to an aggregate term of 42 to 84 months' imprisonment. Browne filed a timely notice of appeal on May 27, 2016, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Browne raises the following question for our consideration:

> Did the [t]rial [c]ourt err in convicting [] Browne of the [o]ffense of [p]ossession of a [f]irearm not to be [c]arried [w]ithout a [l]icense because the Commonwealth fail[ed] to prove beyond a reasonable doubt that [] Browne constructively possessed the firearm at the time of the offense?

Brief of Appellant, at 7.

Browne challenges the sufficiency of the evidence supporting his conviction.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is

circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722–23 (Pa. Super. 2013) (internal citations and punctuation omitted).

Here, Browne challenges his conviction for possession of a firearm not to be carried without a license, which is defined, in relevant part, as follows:

(1) . . . any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a).

Possession of the firearm is the only element challenged by Browne on appeal. Where possession is an element of a crime, the Commonwealth may demonstrate actual or constructive possession. Here, the firearm was not located on Browne's person. Thus, the Commonwealth was required to establish constructive possession.

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted). Possession may be shown by circumstantial evidence. *Commonwealth v. Bentley*, 419 A.2d 85, 87 (Pa. Super. 1980). The intent to exercise control can be inferred from the totality of the circumstances. *Commonwealth v. Kirkland*, 831 A.2d 607, 601 (Pa. Super. 2003).

The cases upon which Browne relies are distinguishable on their facts. Browne first cites *Commonwealth v. Juliano*, 490 A.2d 891, 894 (Pa. Super. 1985). There, police received a tip from a woman that her son, Drueding, was meeting a man named DiBona at Philadelphia International Airport for a drug deal. Police went to the airport, where they surveilled the son and saw him and another man, Cobuccio, meet DiBona. Police subsequently observed Drueding and Cobuccio enter the baggage claim and, shortly thereafter, leave the area carrying a green satchel. Drueding and Cobuccio were then seen driving out of the airport parking area, after which they proceeded to the Sheraton Hotel, approximately one mile away. They stopped there just long enough to pick up DiBona and the appellant, Thomas Juliano.

The vehicle then proceeded north on I-95 and was finally stopped in Bensalem Township. Juliano was located in the rear driver's side seat. After the four passengers got out of the car, police observed the green bag sitting on the floor in front of the rear driver's side seat, which Juliano had been occupying. Police seized the green bag, which was found to contain 2002

white tablets, later identified as counterfeit methaqualone. Juliano was tried and found guilty of possessing a controlled or counterfeit substance.

On appeal, this Court reversed, concluding that, "while it is obvious that [Juliano] knew of the existence and location of the green satchel which had been sitting at his feet during the car ride, we fail to see how [his] knowledge of the *contents* of the green satchel could be inferred from the evidence of this case[.]" *Id.* at 893. The Court stated:

> [W]e do not believe that the location and proximity of the contraband alone should be conclusive of guilt. Here, the green satchel was already in the car when the vehicle stopped at the Sheraton Hotel. Thus, it may have been only happenstance that appellant or DiBona got into the back seat of the car first and that [Juliano] ended up occupying the left side near the green bag.

*Id.*

*Juliano* is distinguishable from the case at bar. In *Juliano*, the evidence clearly demonstrated that the green bag containing the contraband was present in the car prior to Juliano entering the vehicle. Thus, there was no basis to infer that he was aware of the contents of the bag, despite its proximity. Indeed, as the Court noted, "it may have been only happenstance that appellant or DiBona got into the back seat of the car first and that [Juliano] ended up occupying the left side near the green bag." *Id.* There was no evidence, other than his mere presence in the car, of Juliano's involvement in illegal activity.

- 6 -

Conversely, here, Browne was positively identified as the individual who attempted to pass counterfeit currency at the Wawa, and in fact was found to be in possession of numerous counterfeit bills when Officer Tancredi confronted the occupants of the Dodge Charger. Moreover, the gun was located within arm's reach of Browne, directly under the front of his seat, and was not otherwise concealed in any way. Unlike in **Juliano**, where there was no evidence to support an inference that the appellant was aware of the presence of the contraband, here, the fact that Browne was involved in criminal activity immediately prior to the weapon's discovery, combined with the proximity of the gun to his person, supports an inference that he possessed the firearm.

Browne also relies on **Commonwealth v. Duffy**, 340 A.2d 869 (Pa. Super. 1975). There, Duffy was a passenger in a car that was pulled over for an inoperative tail light. A search of the vehicle revealed a pistol far underneath the passenger's side seat, a mask and gloves in the glove compartment, and burglary tools in the back seat. Both Duffy and the driver were found guilty of possession of burglary tools and violation of the Uniform Firearms Act. On appeal, this Court held that the Commonwealth failed to prove that Duffy knew of the presence of the contraband, and thus failed to prove that he had the requisite intent to exercise control. The instant matter is again distinguishable in that, in **Duffy**, there was no evidence that Duffy had been engaged in criminal activity at the time the firearm was discovered. Moreover, unlike in the matter *sub judice*, where the firearm

was well within Browne's reach under the front of his seat, the firearm in **Duffy** was discovered "far underneath" the appellant's seat. **Id.** at 870. Accordingly, **Duffy** provides Browne no support.

Finally, Browne cites **Commonwealth v. Boatwright**, 453 A.2d 1058 (Pa. Super. 1982). There, after responding to a call concerning three "suspicious" men in an automobile parked in front of a residence, police observed Boatwright seated in the front passenger seat of the vehicle and "moving towards his left rear." **Id.** at 1058. The officer could not see Boatwright's hand or arm. After asking Boatwright to exit the vehicle, the officer shined a light onto the left rear floor of the vehicle and saw a gun. Boatwright was convicted of carrying a firearm without a license. On appeal, this Court concluded that Boatwright's "mere presence" at the scene where the gun was found, combined with his leftward movement in the car, was insufficient to establish that he constructively possessed the firearm. Again, the instant matter is distinguishable, as Browne was involved in criminal activity at the time the gun was discovered, and the gun was located directly under the front of his seat, well within arm's reach.

In conclusion, we find that, under the totality of the circumstances established by the Commonwealth, the finder of fact could reasonably have found that Browne had the power to control the firearm and the intent to exercise control over it. **Hopkins**, **supra**. Accordingly, the evidence was sufficient to prove Browne committed the offense of possession of a firearm not to be carried without a license.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2017