J-A01013-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALI ABDUL-MALIK | : | |
| | : | |
| Appellant | : | No. 366 EDA 2025 |

Appeal from the Judgment of Sentence Entered September 10, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003260-2023

BEFORE: DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 2, 2026**

Appellant, Ali Abdul-Malik, appeals from the September 10, 2024 judgment of sentence of three to seven years of incarceration entered in the Delaware County Court of Common Pleas following his jury conviction of Possession of a Firearm Without a License.[1] Appellant challenges the sufficiency of the Commonwealth's evidence underlying his conviction. After careful review, we affirm.

The relevant facts and procedural history are as follows. On April 11, 2023, at 2:40 AM, Pennsylvania State Police ("PSP") Trooper Thomas Platt and his partner observed a vehicle exceeding the speed limit on Route 95. Trooper Platt initiated a traffic stop; Mr. Ridge Tow was the driver of the vehicle; Appellant was the front seat passenger, and Mr. Antarrios J. Flythe

_____

[1] 18 Pa.C.S. § 6106(a)(1).

was seated in the right rear passenger seat.[2] While speaking with Mr. Tow, Trooper Platt detected a strong aroma of burnt marijuana emanating from the vehicle. Mr. Tow presented a driver's license but was not able to produce a registration or insurance card for the vehicle. Trooper Platt then asked Mr. Tow to step out of the vehicle to speak with him. After Trooper Platt commented on the odor of burnt marijuana emanating from the vehicle, Mr. Tow admitted that they had previously been smoking marijuana before getting into the car. Trooper Platt asked if there were any contraband or firearms in the vehicle, to which Appellant responded "no." Trooper Platt then asked for Mr. Tow's consent to search the vehicle, which Mr. Tow denied. Based on the smell of marijuana, Mr. Tow's responses to the trooper's questions—which Trooper Platt perceived as "deceitful" and incongruous with the location and time of the stop—and Mr. Tow's denial of consent to search the vehicle, Trooper Platt called for the K-9 team. Trooper Evan Worth and his canine partner arrived, and while the troopers conducted a preliminary walk around the vehicle to ensure the canine's safety, each trooper saw the butt of a gun sticking out from under the driver's seat. After the canine searched around the vehicle and indicated for contraband inside the vehicle, the troopers placed all three men under arrest, and transported them to the Media State Trooper barracks to await a search warrant for the car.

---

[2] Mr. Flythe's appeal is pending at Docket No. 3139 EDA 2024.

Upon execution of the search warrant, state troopers recovered a second gun—a Smith & Wesson—in the glove compartment of the vehicle; DNA swab testing later revealed the presence of Appellant's DNA on the gun. A third firearm was found between the cargo area and the back seat where Mr. Flythe had been sitting. The DNA swab sample from that firearm matched Mr. Flythe's DNA.[3]

Following this incident, the Commonwealth charged Appellant with, *inter alia*, Possession of a Firearm Prohibited and Firearms not to be Carried Without a License.[4]

Appellant and Mr. Flythe proceeded to a two-day jury trial at which the Commonwealth presented the testimony of the troopers involved in the traffic stop and recovery of the firearms, who testified consistently with the above facts. Trooper Platt also testified that during his encounter with police, Appellant was compliant and did not seem nervous or evasive, or act suspiciously.

The Commonwealth also presented, relevant to the instant appeal, the testimony of PSP Trooper Erin Achtel, a full-time member of the forensic services unit; and Beverly Beshore-Strohm, Forensic Science Supervisor in the

---

[3] Troopers also discovered drugs and drug paraphernalia during the search.

[4] 18 Pa.C.S. §§ 6105(a)(1) and 6106(a)(1). The Commonwealth also charged Appellant with two counts of Possession of Drug Paraphernalia, which the court quashed pre-trial.

Serology Unit of the PSP Regional Laboratory; and Jared Hiester, a forensic DNA scientist who worked in the Forensic DNA Division of the PSP.

Trooper Achtel testified that she obtained a DNA sample from Appellant, Mr. Tow, and Mr. Flythe. She also testified that she swabbed for DNA the triggers, handles, magazines, and magazine releases of each of the firearms found in the vehicle using one swab per firearm and its corresponding magazine.

Ms. Beshore-Strohm testified that she received three DNA samples, one from each of the men present in the vehicle stopped by Trooper Platt. She further testified that she also received three swabs, one from each of the firearms found in the vehicle, which she repackaged and sent for DNA analysis.

Mr. Hiester testified that he received one DNA sample from each of the occupants of the vehicle for testing. He testified that Appellant's DNA was present on the Smith & Wesson firearm found in the glove compartment and that, although the DNA sample taken from that firearm was "consistent with a mixture of four contributors[,]" testing excluded the other occupants as potential contributors to the DNA found on that firearm.[5] He also testified that he could not specifically determine in what order or when DNA is placed on an object or the precise source of the DNA, meaning that DNA could have been on the firearm from his sweat, a sneeze, or a cough.

_____

[5] N.T., 3/21/24, at 124-125.

On March 21, 2024, the jury convicted Appellant of Firearms not to be Carried Without a License. On September 10, 2024, the trial court sentenced Appellant to a term of three to seven years of incarceration. Appellant filed a timely post-sentence motion, which the trial court denied on January 8, 2025.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Can a person be found [g]uilty of Possession of a Firearm without a License just because he or she is seated in front of the common repository for items that the owner, the driver and other passengers use to hold items, a glove box?

2. Did the prosecution meet the burden of [p]roving that [Appellant] had the necessary intent at the present time to [p]ossess and [c]ontrol the firearm?

3. Was the DNA found on the firearm sufficient evidence to tie [Appellant] to a gun in the glove compartment when only the gun but not the magazine was tested, Appellant's DNA was only one of four found on the weapon, the order the DNA was put on the weapon is unknown and it could have been from getting anything from the glove compartment for anyone in the car, and there is no evidence any DNA was placed on the gun at any time that could in any way be indicative of either dominion, control[,] or intent to control in the weapon in the present tense.

Appellant's Brief at 5 (suggested answers omitted).

Each of Appellant's interrelated issues challenge the sufficiency of the evidence in support of his conviction. In particular, Appellant claims that the Commonwealth's evidence that Appellant's DNA was present on the firearm was insufficient to demonstrate he had present dominion and control over it to prove constructive possession. *Id.* at 18. In support of this claim, he notes

that he was merely seated in front of the glove compartment, he did not attempt to hide the firearm, and he was not acting nervous during the police encounter. *Id.* He admits that the presence of his DNA on the firearm indicates that he "most likely had knowledge of it." *Id.* at 19. He speculates, however, that his DNA "easily have gotten there incidentally by touching [the firearm] to get something from the glove compartment" or "from a sneeze or perspiration." *Id.*; *see also id.* at 21. Appellant also claims that the DNA test results indicating the presence of his DNA on the firearm does not prove dominion and control because, *inter alia*, "there is no evidence as to where on the gun Appellant's DNA was found," "[t]he quantity of the DNA [was] never stated[, w]e have no idea as to the chain of custody of the sample that was tested[, and] no attempt to find the other two clear DNA samples was made." *Id.* at 23. Appellant concludes, therefore, that "the whole investigation was aimed at finding a specific result, and not who might have placed the firearm in the glove box." *Id.*

We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014) (citation omitted). Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—"is free to believe all, part, or none of the

evidence." ***Id.*** at 40 (citation quotation omitted). "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo*[,] and our scope of review is plenary." ***Commonwealth v. Brooker***, 103 A.3d 325, 330 (Pa. Super. 2014) (citation omitted).

A person has committed the offense of Firearms not to be Carried without a License when he "carries a firearm in any vehicle . . . without a valid and lawfully issued license[.]" 18 Pa.C.S. § 6106(a)(1).

With respect to the possession element of the offense, a jury may find that a defendant actually possessed contraband or did so constructively. ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa. Super. 2018). "Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction." ***Id.*** (summarizing ***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) as "holding that a conviction under 18 Pa.C.S. § 6106(a) was supported by a finding of constructive possession"). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." ***Parrish***, 191 A.3d at 36 (citation omitted). "We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control." ***Id.*** (citation and quotation marks omitted).

"[A]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." ***Id.*** at 36-37 (citation omitted). "In other words, the Commonwealth must establish facts from which the trier of

fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue." *Id.* at 37 (citing **Commonwealth v. Davis**, 743 A.2d 946, 953–54 (Pa. Super. 1999) (holding that evidence was sufficient to prove constructive possession over drugs found in common areas of an apartment where the defendant entered the apartment using his own key, and possessed $800 in cash on his person, and police recovered defendant's identification badge, size-appropriate clothing, and firearms from a bedroom)).

Following our review, we conclude that Appellant's claim that the Commonwealth did not present sufficient evidence to prove that he constructively possessed the firearm is unavailing. The evidence and all reasonable inferences therefrom viewed in the light most favorable to the Commonwealth as verdict winner showed that: (1) the troopers found a firearm in a glove compartment in front of where Appellant was seated and (2) investigators found DNA matching Appellant's DNA on that firearm and did not find the DNA of any of the car's other passengers on it. Contrary to Appellant's claim, that investigators did not identify the other people whose DNA was present on the Smith & Wesson found in the glove compartment and could not determine whether Appellant's DNA came from his sweat or a cough or sneeze is irrelevant and does not negate that he constructively possessed the firearm. From the evidence of Appellant's proximity to the gun and the presence of his DNA on it, it is reasonable for the jury to infer that Appellant had immediate access to it and, thus, the present intent to exercise control.

Accordingly, we conclude that the Commonwealth presented sufficient evidence, from which the jury could find Appellant constructively possessed the firearm and convict him of the offense of Firearms not to be Carried without a License.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/2/2026