J-S41037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAUHEED DYCHES | : | |
| | : | |
| Appellant | : | No. 52 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 27, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0003289-2022

BEFORE:   BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 27, 2026**

Tauheed Dyches appeals from the judgment of sentence, amounting to two-to-four years of incarceration, to be followed by four years of probation, imposed following a non-jury trial in which the trial court found him guilty of possessing a firearm as a prohibited person and fleeing or attempting to elude a police officer.[1] Dyches challenges the sufficiency of evidence underpinning his convictions as well as the court's discretion in imposing its judgment of sentence. We affirm.

The trial court recounted the factual history of this case as follows:

On June 29, 2021, Officer [Kyrece] Davis of the Philadelphia Police Department conducted narcotics surveillance [on] the three-thousand block of North 15th Street. There[,] he observed Dyches

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1) and 75 Pa.C.S. § 3733(a), respectively.

sitting in a lawn chair underneath a tree. On two occasions, Officer Davis watched an individual approach [Dyches] and exchange United States currency for unknown small items. After the second transaction, [Dyches] entered a Ford Taurus bearing a [Pennsylvania] tag[, "]LMM2006[,"] and left the area. Officer Davis radioed to another officer, [Jeffrey] Holden, the description of [Dyches], the car, and [Dyches'] direction of travel.

Officer Holden came upon [Dyches'] vehicle and activated his lights to initiate a traffic stop. The driver immediately exited the vehicle and fled. Officer Holden testified that the individual who took off running matched the description of [Dyches] as relayed to him by Officer Davis. Officer Holden exited his patrol car, peered into the vehicle to ensure that [Dyches] was the only occupant of [the vehicle], and then pursued [Dyches] on foot. [Dyches] evaded capture.

Officer Davis then returned to the [police] narcotics headquarters and ran the tag number of the vehicle driven by [Dyches]. The results showed that a female owned the vehicle, but during an unrelated traffic stop in April of 2021, the occupants of the vehicle had been [Dyches] and the female owner. Officer Davis subsequently ran [Dyches'] name in the police mug shot system. He testified that the individual pictured matched the same individual he had observed during the narcotics investigation.

Officer Davis then obtained a search warrant for the vehicle and recovered a black handgun with an extended magazine, U.S. currency, a Citi Bank benefit check, and multiple used and unused checks all in [Dyches'] name. An arrest warrant was issued, and [Dyches] was subsequently arrested and charged with possession with intent to deliver and violations of the Uniform Firearms Act.

Trial Court Opinion, 8/20/24, at 1-2 (record citations and unnecessary wording omitted).

After his arrest, but prior to trial, Dyches, "through counsel, moved to suppress the recovered firearm, arguing that law enforcement's search of the vehicle was without probable cause and that the search warrant was unlawfully issued and executed." *Id.* at 2. The trial court ultimately denied the

suppression motion, and the case proceeded to trial, resulting in Dyches being convicted of the two above-mentioned crimes.

Following sentencing, Dyches filed a *pro se* post-sentence motion asserting, *inter alia*, violations of the Fourth Amendment to the United States Constitution pertaining to the search of the car and ineffective assistance of counsel throughout his proceedings.[2] The court did not respond to the motion's contents. Thereafter, Dyches' trial counsel filed a motion to withdraw, which, through our review of the record, was not formally granted. Nevertheless, trial counsel filed a timely notice of appeal on December 26, 2023, and the court directed Dyches to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Later, and without any docket activity in the interim, the court appointed new counsel, Dyches' counsel in the present appeal, on April 8, 2024.[3]

---

[2] As Dyches was represented by counsel, this filing was a legal nullity. **See Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa. Super. 2007). Moreover, absent narrow exceptions not applicable here, "ineffective assistance of counsel claims **must be deferred to** [**Post Conviction Relief Act**] **review.**" **Commonwealth v. Watson**, 310 A.3d 307, 313 (Pa. Super. 2024) (emphasis in original).

[3] New counsel filed what amounts to a second notice of appeal on April 24, 2024, five months after the judgment of sentence had been imposed, and the court correspondingly issued another order directing Dyches to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925. New counsel complied with this second directive by filing said statement. On June 28, 2024, we *sua sponte* dismissed, as duplicative, the appeal that was
*(Footnote Continued Next Page)*

On appeal, Dyches presents two issues for review:

1.  Was the evidence presented at trial sufficient, beyond a reasonable doubt, for every element of the crimes for which he was convicted?

2.  Did the sentencing court abuse its discretion by imposing a sentence that was not based upon the gravity of the violation, the extent of his record, his prospect of rehabilitation, nor an assessment of the mitigating and aggravating factors as noted in Pennsylvania's Sentencing Code?

Appellant's Brief at 7 (questions reformatted).[4]

Dyches' first claim challenges the sufficiency of evidence supporting his convictions for the firearms offense as well as fleeing or attempting to elude

---

initiated by the notice appeal that present counsel filed. **See** Superior Court Order, 6/28/24, 1 (1209 EDA 2024).

[4] We note with disapproval that Dyches' brief is wholly single spaced in violation of Pennsylvania Rule of Appellate Procedure 124(a)(3), which provides that text in briefs must be double spaced, with the exception of footnotes and quotations that are more than two lines long. We additionally note that two of the three judges on this panel, and one additional sitting judge of our Court, have previously reminded Dyches' counsel of this particular briefing obligation on prior occasions. **See Commonwealth v. Cunningham**, 2025 WL 3688166, 5 n.4 (Pa. Super., filed Dec. 19, 2025) (unpublished memorandum) (2425 EDA 2024); **Commonwealth v. Ferst**, 2023 WL 315620, *3 n.6 (Pa. Super., filed Jan. 19, 2023) (unpublished memorandum) (2391 EDA 2021); **Commonwealth v. Pagan**, 2022 WL 39547, 3 n.4 (Pa. Super., filed Jan. 5, 2022) (unpublished memorandum) (322 EDA 2021). For the benefit of our Court's ease of review, we strenuously insist that Dyches' counsel adhere to strict compliance with Rule 124(a)(3) in all future briefs filed with this Court. **See** Pa.R.A.P. 2101 ("Briefs . . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed[.]").

a police officer.

For challenges to the sufficiency of evidence to support a criminal conviction, we employ a well-settled standard of review:

> the standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Kim*, 888 A.2d 847, 851-52 (Pa. Super. 2005) (citation and brackets omitted). Moreover, we "consider all of the testimony that was presented . . . without consideration as to the admissibility of that evidence." *Commonwealth v. Smith*, 568 A.2d 600, 603 (Pa. 1989). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo*[,] and our scope of review is plenary." *Commonwealth v. Brooker*, 103 A.3d 325, 330 (Pa. Super. 2014) (citation omitted).

Dyches' brief does not delve into any of the discrete elements of either of his convictions. Instead, he is first alleging that the Commonwealth "failed

to sufficiently establish beyond a reasonable doubt the necessary proof of the commission of the crimes by . . . Dyches." Appellant's Brief at 13. Specifically, he asserts that "[t]he Commonwealth based [its] entire case on the identification of [Dyches] by [O]fficer Davis, and that identification was based on hearsay evidence about [Dyches] obtained from a police database." *Id.* Dyches then identifies the "48A database system" used by the Philadelphia Police Department, which produced a document, introduced at his trial, containing "information about a prior vehicle stop . . . involving the Ford Taurus [where Dyches was a passenger] that [O]fficer Davis claims he [later] observed [Dyches] enter [on the date the vehicle was recovered,] June 29, 2021." *Id.* Based on this document, Officer Davis then conducted a further database search of Dyches, which led to the uncovering of Dyches' prior mugshot, connecting him to the June 29, 2021 incident, and issuance of an arrest warrant. *See id.* at 14. Dyches also asserts that the database document's authenticity was never established. *See id.*

Dyches' identity-based contentions necessarily fail because they are predicated on arguments that invoke the admissibility of evidence, e.g., hearsay and authenticity. As, on sufficiency review, we do not consider whether "some of the evidence was wrongly allowed," *Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010) (citation omitted), there is no basis

to reverse on these evidentiary grounds through the lens of sufficiency.[5]

Dyches next suggests that the Commonwealth failed to demonstrate constructive possession of the firearm that was recovered from the vehicle. 18 Pa.C.S. § 6105(a)(1) prohibits "[a] person who has been convicted of [certain offenses from] possess[ing] . . . a firearm in this Commonwealth."

> This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." **Commonwealth v. Heidler**, 741 A.2d 213, 215 (Pa. Super. 1999). Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. [**See**] **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013) (conviction under 18 Pa.C.S. § 6106(a) supported by a finding of constructive possession). **See also Commonwealth v. Parker**, 847 A.2d 745 (Pa. Super. 2004) (same). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." **Hopkins**, **supra** at 820 (citation and quotation omitted). "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." **Id.** (citation and quotation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." **Id.** (citation and quotation omitted).

**Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa. Super. 2018). Moreover,

> [i]t is well established that, "[a]s with any other element of a

_____

[5] In any event, Officer Davis identified Dyches in court, indicating that he encountered him on June 29, 2021, exchanging "unknown small items" for an unknown amount of United States currency and later saw him get into the Ford Taurus, with an identified license plate number, to which Officer Davis then relayed that information, including a description of Dyches, to Officer Holden. **See** N.T. Trial, 9/20/23, at 6-7, 9. Consistent with this information, Officer Holden initiated a traffic stop of that Taurus, and a person matching Dyches' description thereafter fled on foot. **See id.** at 33.

crime, constructive possession may be proven by circumstantial evidence." **Commonwealth v. Haskins**, [ ] 677 A.2d 328, 330 ([Pa. Super.] 1996) (citation omitted). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue. **See, e.g.**, **Commonwealth v. Davis**, 743 A.2d 946, 953–54 (Pa. Super. 1999) (holding that evidence was sufficient to prove constructive possession over drugs found in common areas of an apartment where the defendant entered the apartment using his own key, and possessed $800 in cash on his person, and police recovered defendant's identification badge, size-appropriate clothing, and firearms from a bedroom).

**Parrish**, at 36-37 (parallel citation omitted).

Nevertheless, mere presence at a place where contraband is found, standing alone, is insufficient to demonstrate constructive possession. **See, e.g.**, **Commonwealth v. Valette**, 613 A.2d 548, 551 (Pa. 1992). While spatial nexus, in a vacuum, is not conclusive of guilt, **see Commonwealth v. Juliano**, 490 A.2d 891, 893-94 (Pa. Super. 1985), "knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and thus, his constructive possession." **Parrish**, 191 A.3d at 37. Stated differently, a conjecture-laden "suspicion of possession" is insufficient to demonstrate constructive possession, **see id.**; instead, there must be some sort of tether or nexus between a defendant's actions or inactions and the object, itself. **See Commonwealth v. Peters**, 218 A.3d 1206, 1209 (Pa. 2019).

Upon review, there was sufficient evidence for the court, sitting as fact-finder, to conclude that Dyches, prior to fleeing from the vehicle, had both the power and intent to control the recovered firearm. Dyches was the sole

occupant of the vehicle,[6] a vehicle he had been seen in prior. Providing further evidence of his association with the vehicle, on June 29, 2021, Dyches' personal items were found therein, some of which contained his name. ***See, e.g.***, N.T. Trial, 9/20/23, at 17 (identifying that "checks for items with . . . Dyches'[] name on it and his address" were recovered from the vehicle). After Dyches, who was its sole occupant, fled and abandoned the vehicle, the police, upon the execution of a search warrant, recovered the firearm from "underneath the driver's seat" where the "butt of the extended magazine" could be seen by looking under the seat. ***Id.*** at 28-29. As such, given, *inter alia*, the firearm's proximity to Dyches while he was driving the vehicle, there was a reasonable inference that could be made, when looking at the totality of the circumstances, regarding his dominion and control over that weapon. Under both theories presented, Dyches' challenge to the sufficiency of the evidence is meritless.

---

[6] Although Dyches argues that the vehicle was not registered to him, ***see*** Appellant's Brief at 16, he provides no authority establishing that vehicle ownership, or lack thereof, renders constructive possession an impossibility. Indeed, ownership of a vehicle is not necessary to prove constructive possession of contents therein. ***See, e.g.***, ***Commonwealth v. Wright***, 255 A.3d 542, 553 (Pa. Super. 2021) (establishing that the circumstantial evidence showed that contraband was within that appellant's "knowledge, control, and dominion . . . [d]espite [his] lack of ownership interest in the" vehicle). Furthermore, Dyches provides no support for his contention that the concealment of the weapon, underneath the seat, and not in plain view, eliminates the possibility of any intent to control the firearm. ***See*** Appellant's Brief at 16. Although the spatial nexus is relevant, the firearm was still within arms' reach of Dyches, as the driver of the vehicle.

With respect to his second issue, a challenge to the discretionary aspects of his sentence, we find such a contention waived for lack of preservation. Dyches did not raise such a claim at his sentencing hearing. *See* *Commonwealth v. Clary*, 226 A.3d 571, 579 (Pa. Super. 2020) ("To properly preserve an issue challenging the discretionary aspects of sentencing, a defendant must object and request a remedy at sentencing, or raise the challenge in a post-sentence motion."); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Moreover, although Dyches' *pro se* post-sentence motion did not reference the discretionary aspects of his sentence, it was, in any event, a nullity. *See Nischan*, 928 A.2d at 355. Therefore, in the absence of either a contemporaneous objection at the sentencing hearing or a post-sentence motion, raising a discretionary sentencing challenge, we find the issue waived. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1042-43 (Pa. Super. 2013) (*en banc*) (holding that appellant waived discretionary aspects of sentence claim by failing to preserve it in a post-sentence motion or at sentencing).[7]

---

[7] In any event, Dyches' brief does not provide any record citations to the sentencing hearing. However, as the court indicates, the recommended sentence for his lead offense, consistent with Pennsylvania's Sentencing Guidelines, was 84-102 months of incarceration, whereas he, in fact, received 24-48 months. *See* Trial Court Opinion, 8/20/24, at 6. Additionally, where, as here, a pre-sentence report exists, we presume "that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa. Super. 2014) (citation omitted). Dyches

*(Footnote Continued Next Page)*

As neither of Dyches' two issues warrant relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/27/2026

---

has provided nothing to overcome this presumption. The court clearly also considered Dyches' rehabilitative needs by requiring, in its sentencing order, that he obtain a G.E.D. and "attend an educational institution or participate in a course of vocational training." Sentencing Order, 11/27/23. Even assuming *arguendo* that Dyches had preserved his instant sentencing claim, we would not find an abuse of discretion.